IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYNN LOWERY | § | |
| | § | CIVIL ACTION NO. 17-00166 |
| VS. | § | |
| | § | |
| WAL-MART STORES TEXAS, LLC | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DEFENDANT, WAL-MART STORES TEXAS, LLC, and files its Motion for Summary Judgment pursuant to the FEDERAL RULES OF CIVIL PROCEDURE, and would respectfully show the Court the following:

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 24, 2014, Plaintiff Lynn Lowery ("Plaintiff") went to Walmart Store #293 in Navasota, Texas, with her husband, Earl.[1] After purchasing merchandise from the store, Plaintiff carried the items she recently purchased back to her car.[2] Plaintiff opened the trunk of her vehicle, and, as it was opening, took a step back to allow it to open.[3] When Plaintiff stepped back, her foot went into a pothole in the parking lot and she fell.[4] The pothole was in plain view.

---

[1] *See* Exhibit A at Paragraph 13 and Exhibit E at Page 26, Lines 19-21.
[2] *Id.*
[3] *Id.*
[4] *See* Exhibit B at Page 73, Lines 14-19.

Plaintiff filed the instant lawsuit against Defendant on December 9, 2016, which Defendant subsequently removed. Docket call is currently set for April 27, 2018.

## II. SUMMARY JUDGMENT STANDARD AND EVIDENCE

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law."[5] "Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact."[6] If the burden of proof at trial lies with the non-moving party, the movant may satisfy its initial burden by pointing out to the district court portions of the record demonstrating an absence of evidence to support the non-moving party's case.[7] While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the non-movant's case.[8] "When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."[9] The non-movant must identify specific evidence in the record and

---

[5] FED. R. CIV. P. 56(c)(1)(A).
[6] *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[7] *Celotex Corp.*, 477 U.S. at 325.
[8] *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).
[9] *Id.*

2

articulate how that evidence supports that party's claim.[10] "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[11]

In a diversity jurisdiction case, when evaluating the possibility of whether there is a genuine issue of material fact regarding the elements of a plaintiff's cause of action, district courts are to apply the substantive law of the forum state.[12] "And the court is 'bound to apply the law as interpreted by the state's highest court.'"[13] As such, the Court should apply Texas law, and give deference to decisions of the Texas Supreme Court. And importantly, in Texas, the mere fact of an accident is not evidence of negligence.[14]

In support of its Motion for Summary Judgment, Defendant offers the following summary judgment evidence, attached hereto and fully incorporated by reference.

**Exhibit A:   Plaintiff's Original Petition**

**Exhibit B:   Deposition Testimony of Plaintiff, Lynn Lowery**

---

[10] *Id.*

[11] *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[12] *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 421 (5th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[13] *Hughes*, 278 F.3d at 421 (citing *Texas Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995) (quoting *Ladue v. Chevron U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir. 1991)).

[14] *H.E. Butt Grocery Co. v. Godawa,* 763 S.W.2d 27, 30 (Tex. App.—Corpus Christi 1998, no pet.).

**Exhibit C:   Deposition Testimony of Plaintiff's Husband, Earl Lowery**

**Exhibit D:   Exhibit 2 to the Deposition of Plaintiff's Husband**

### III. SUMMARY OF THE ARGUMENT

Plaintiff pled this lawsuit as "Negligence-Premises Liability."[15] While this pleading is not precisely clear, Plaintiff's claims clearly fall under premises liability law. As shown below, Plaintiff's premises liability claim against Defendant must fail as a matter of law because the condition at issue did not present an unreasonable risk of harm. Further, the condition at issue was an open and obvious condition for which Defendant owed Plaintiff no legal duty of care. Finally, even assuming the condition was *not* open and obvious and *did* constitute an unreasonable risk of harm as a matter of law, there is no evidence suggesting Defendant had actual or constructive notice of the condition at issue.

Further, Plaintiff has brought a claim of gross negligence against Defendant. Gross negligence requires Defendant's act or omission to involve an extreme degree of risk, and requires Defendant to have actual, subjective awareness of that risk. Gross negligence must be proven by clear and convincing evidence. There is no evidence that Defendant's employees had actual subjective awareness of any risk to Plaintiff, nor is there evidence that any conduct by Defendant involved an extreme degree of risk.

---

[15] *See* Exhibit A at Paragraph 18.

## IV. ARGUMENT AND AUTHORITIES

**A.    TEXAS LAW HAS CREATED AN EXPLICIT DISTINCTION BETWEEN A NEGLIGENT ACTIVITY CASE AND A PREMISES LIABILITY CASE.**

Out of concern that premises owners not be held liable for the carelessness of those whom the premises owner has no control, the Texas Supreme Court has distinguished two specific causes of action arising in negligence for plaintiffs who wish to hold a premises owner liable for injuries that occurred on the premises owner's property: negligent activity and premises liability. While both causes of action are theories of liability based on a negligence concept, the causes of action are not interchangeable. As the Texas Supreme Court has stated, "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that causes the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe."[16]

Texas courts have consistently rejected negligent activity claims where plaintiffs attempt to raise premises liability allegations under a claim of negligent activity, and where plaintiffs attempt to blur the distinction between these two types of claims.[17] When a plaintiff brings a <u>negligence claim</u> for an injury that has

---

[16] *See Del Lago Partners v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010).
[17] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

been caused by a <u>condition</u> on the defendant's premises, the claim should be recast as a premises liability claim.[18]

A trial court <u>should not</u> submit a negligent activity claim to the trier of fact unless the evidence shows that the injury was caused by or was a contemporaneous result of the negligent activity itself, rather than a condition created by the negligent activity.[19] If the injury was caused by a condition created by the activity rather than the activity itself, a plaintiff is limited to a premises liability claim.[20]

Plaintiff's pleadings make it evidence that she is contending she was injured as a result of a condition on the premises—a pothole. For the context of a negligent activity claim, Plaintiff has never alleged any facts that Defendant was engaged in any activity that contemporaneously caused injury to Plaintiff.[21] Rather, Plaintiff pled that as "a result of the hole of Defendant's premises, Plaintiff fell backward,

---

[18] *See, e.g., Del Lago Partners*, 307 S.W.3d at 776 (A plaintiff's claim against a bar for failure to diffuse tensions that escalated into a fight was properly pleaded as a premises liability claim); *Keetch*, 845 S.W.2d at 264 (A plaintiff's claim that she was injured by an activity of spray plants with liquid only raised a cause of action for premises liability); *In re Tex. DOT*, 218 S.W.3d 74, 77–78 (Tex. 2007) (A plaintiff's allegations that negligent activities created conditions at the scene of an accident was improperly pled as a negligent activity claim); *Brooks v. PRH Invs.*, 303 S.W.3d 920, 923-25 (Tex. App.—Texarkana 2010, no pet.) (A plaintiff's negligence claim alleging injuries from a wet floor should have been pleaded as a premises claim); *Carbonara v. Texas Stadium Corp.*, 244 S.W.3d 651, 656–57 (Tex. App.—Dallas 2008, no pet.) (A plaintiff's negligence claim alleging injuries from unsafe escalator should have been pleaded as a premises claim) (emphasis added).

[19] *Keetch*, 845 S.W.2d at 264; *Brooks*, 303 S.W.3d at 923; *Kroger Co. v. Persley*, 261 S.W.3d 316, 320 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 153 (Tex. App.—Texarkana 1998), *pet. denied*, 988 S.W.2d 740 (Tex. 1998).

[20] *See Brooks*, 303 S.W.3d at 923; *Lucas*, 964 S.W.2d at 153.

[21] *See* Exhibit A.

falling on her right side and bracing her fall with her right hand."[22] As Plaintiff is alleging injuries as a result of a condition present on the property, Plaintiff is making a claim for premises liability. Accordingly, to the extent Plaintiff's Original Petition can be interpreted to bring a general negligence claim against Defendant, it should be dismissed and recast solely as a claim for premises liability.[23]

**B.    DEFENDANT DID NOT HAVE ACTUAL KNOWLEDGE OF THE CONDITION AT ISSUE.**

In a claim of premises liability where the plaintiff is an invitee, a plaintiff must establish the following elements:

(1)    The owner/operator had actual or constructive knowledge of some condition on the premises;

(2)    The condition at issue posed an unreasonable risk of harm;

(3)    The owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4)    The owner's/operator's failure to use such care proximately caused the plaintiff's injuries.[24]

In this case, without conceding liability as to elements (3), (4), Defendant contends that there is no genuine issue of material fact as to elements (1) and (2).

---

[22] *See* Exhibit A at Paragraph 13.
[23] *See Keetch*, 845 S.W.2d at 264; *Brooks*, 303 S.W.3d at 923; *Kroger Co. v. Persley*, 261 S.W.3d 316, 320 (Tex.App.—Houston [1st Dist.] 2008, no pet.); *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 153 (Tex.App.—Texarkana 1998), *pet. denied*, 988 S.W.2d 740 (Tex. 1998).
[24] *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Keetch,* 845 S.W.2d at 264; *Corbin v. Safeway Stores, Inc*., 648 S.W.2d 292, 296 (Tex. 1983).

Accordingly, Defendant should be granted summary judgment as a matter of law, and Plaintiff's premises liability claim should be dismissed with prejudice.

To establish that Defendant had actual or constructive knowledge of the alleged substance on the ground, Plaintiff must show that one of the following three situations existed:

(1)   Defendant placed the condition onto the ground;
(2)   Defendant actually knew the condition was present on the ground before the incident and negligently failed to remove the condition; or
(3)   It was more likely than not that the condition was present on the ground long enough to give Defendant a reasonable opportunity to discover the condition before the incident occurred.[25]

Accordingly, for Defendant to be granted summary judgment on Plaintiff's premises liability claim, Defendant must show the Court that there is no genuine issue of material fact regarding the above three elements of notice. If Defendant meets that burden, and if Plaintiff cannot produce admissible evidence to create an actual fact issue regarding notice, the Court should grant summary judgment for Defendant and dismiss Plaintiff's premises liability claim with prejudice.

The standards for actual notice are incredibly straightforward; a defendant has notice of a condition on its premises if the defendant actually knew about the condition. In the context of a condition on the floor of the premises, a defendant

---

[25] *See Keetch*, 845 S.W.2d at 265.

may have actual notice about the substance if the defendant created the condition.[26] Alternatively, a defendant would have actual notice of the condition sufficient to establish liability if the defendant was actually informed of the condition's presence with sufficient time prior to the incident to remedy the condition or to warn others about the condition.[27] The limitation of notice liability to instances where the defendant negligently failed to remedy the condition after being informed of the condition's presence makes sense; a defendant should not be charged with notice if the incident occurred before the defendant had a reasonable opportunity to act on its notice of the condition.

In the instant case, Plaintiff has no evidence that Defendant actually knew about the pothole's presence prior to Plaintiff's fall. During the depositions of Plaintiff and her husband, Mr. Lowery, both witnesses described all their conversations with Walmart personnel concerning the incident. Importantly, no Walmart personnel told either Plaintiff or Mr. Lowery that they had any actual knowledge of the pothole in question. Mr. Lowery testified as follows:

> Q:  Before this accident, did anyone, whether it be your family members, your friends, or anyone at Walmart or anybody, did anyone ever tell you anything addressing any issues with that particular store's parking lot?
> A:  No.[28]

---

[26] *See id.*

[27] *See id.*

[28] Exhibit C at Page 32, Lines 20-24.

…

Q:    Okay. All right. With that goal having been explained, can you tell me everything that you recall anyone who worked for Walmart telling you on the date of the incident after your wife's fall?

A:    Nobody told me anything other than they called the ambulance.

Q:    Do you recall any conversations that took place between either you, your wife, and any person that worked for Walmart?

A:    Me and the assistant manager.

Q:    Tell me what—who said what. Tell me about the conversation.

A:    I just—she just—she wanted my wife and my name. And that was about it, as far as I know.

Q:    Other than that, what you've just told me, do you recall any other portion of that conversation that you, your wife, or anyone else had with this assistant manager?

A:    No.

Q:    Do you recall anybody else talking with anyone from Walmart on this particular day concerning your wife's fall?

A:    No.

Q:    Earlier I talked to you about my goals. Have you told me everything that you recall hearing on the day of this incident involving a Walmart associate and any other person related to your wife's fall? Any other conservations?

A:    On that day?

Q:    Yes.

A:    I don't recall any other conversations.[29]

Mr. Lowery further testified that, during his deposition, he told defense counsel about all the conversations he had with anyone from Walmart concerning the incident.[30] None of those conversations revealed any actual notice concerning the pothole at issue.[31]

---

[29] *Id.* at Page 50, Lines 17-25 and Page 51, Lines 1-22.
[30] *Id.* at Page 51, Lines 5-13.
[31] *See* Exhibit C.

Plaintiff testified similarly. During her deposition, Plaintiff testified that she did not have any conversations with Walmart personnel, nor did she overhear any conversations concerning the incident on the date of the incident. Further, she testified that she has never returned to the store to speak to anyone from Walmart concerning the incident. Finally, Plaintiff sat in during the deposition of her husband, and confirmed that he did not omit any details concerning the incident, during his testimony. Specifically, Plaintiff testified as follows:

Q:   Has your husband ever told you that he knew anything about your accident that he didn't testify to that you're aware of?
A:   No.[32]

…

Q:   Since this Wal-Mart incident, have you ever gone back to the store and spoken to anyone from Wal-Mart concerning this incident?
A:   No.[33]

…

Q:   Tell me every conversation that you recall between anyone from Wal-Mart involving this accident that occurred at the scene of the accident.
A:   That were at the scene of the accident?
Q:   Yes.
A:   No one.
Q:   All right. You don't recall any conversations?
A:   I didn't talk to anyone that I remember.
Q:   And you didn't hear anybody saying anything?
A:   No, sir.[34]

---

[32] Exhibit B, Page 64, Lines 9-12.
[33] *Id.* at Page 63, Lines 20-23.
[34] *Id.* at Page 77, Lines 17-25 and Page 78, Lines 1-2.

…

Q:    .. and you leave the store on that particular day, you leave the parking lot without having—without recalling any of the substance of any conversations, true?

A:    Correct.

Q:    Since that day, have you ever come back and talked with anybody that works at that particular store regarding this accident?

A:    No.[35]

The above testimony makes it clear that Plaintiff has no evidence supporting Walmart's actual notice of the pothole at issue. Absent such evidence, Defendant is entitled to summary judgment on the actual notice prong of Plaintiff's premises liability claim.

## C.  DEFENDANT DID NOT HAVE CONSTRUCTIVE KNOWLEDGE OF THE CONDITION AT ISSUE.

Plaintiff's alternate theory of liability against Defendant is an allegation that Defendant had constructive notice of the condition in question. The Texas Supreme Court has set a high standard to establish a defendant's constructive notice of a condition.[36] The *Reece* court engaged in a detailed discussion of constructive notice, and identified a temporal evidence requirement necessary to showing constructive notice; the requirement is also known as the "time-notice rule."[37]

---

[35] *Id.* at Page 78, Lines 5-13.

[36] *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812 (Tex. 2002).

[37] *Id.* at 815–16.

In beginning its discussion, the *Reece* court stated, "The rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence."[38] In fact, the court made a point to reference a court of appeals decision[39] which, in describing the "time-notice rule," stated, "[W]e know of no rule of law that is better established in this state."[40] The Texas Supreme Court explained that the "time-notice rule" emerged from "our reluctance to impose liability on a storekeeper for the carelessness of another over whom it had no control or for 'the fortuitous act of a single customer' that could instantly create a dangerous condition."[41] Further, the court affirmed use of the "time-notice rule" even though the court recognized that the rule might make it impossible for the plaintiff to show actual or constructive knowledge.[42]

The "time-notice rule" was endorsed because the court felt that "temporal evidence best indicates whether the owner had a reasonable opportunity to

---

[38] *Id.* at 816.

[39] *F.W. Woolworth Co. v. Goldston*, 155 S.W.2d 830 (Tex.Civ.App.—Amarillo 1941, writ ref'd w.o.m.).

[40] *Reece*, 81 S.W.3d at 816 (citing *Woolworth Co.*, 155 S.W.2d at 832).

[41] *Id.* (citing *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 541 (Tex. 1976)).

[42] *Id.*; *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102–03 (Tex. 2000) (in which the court also discussed the "time-notice rule" and declined to limit that rule solely to slip-and-fall cases).

discovery and remedy a dangerous condition."[43] In discussing the obligation placed

upon a plaintiff suing for premises liability, the court stated the following:

> An employee's proximity to a hazard, with no evidence indicating
> how long the hazard was there, merely indicates that it was *possible*
> for the premises owner to discover the condition, not that the premises
> owner reasonably *should* have discovered it. Constructive notice
> demands a more extensive inquiry. Without some temporal evidence,
> there is no basis upon which the factfinder can reasonably assess the
> opportunity the premises owner had to discover the dangerous
> condition.[44]

In order to make its ruling abundantly clear, the court summarized its ruling,

noting that in order to impose liability based on constructive notice "there *must* be

some proof of how long the hazard was there before liability can be imposed on the

premises owner for failing to discover and rectify, or warn of, the dangerous

condition."[45]

In the case before the Court, Plaintiff has made it very clear that she does not

know how long the pothole was present on Defendant's premises prior to her trip

and fall incident. She specifically testified as follows:

> Q:    Without guessing, do you have any idea how long that pothole existed
>       prior to your accident?
> A:    I have no idea.
> Q:    Has anyone ever told you how long that pothole existed prior to this
>       Wal-Mart incident?

---

[43] *Reece*, 81 S.W.3d at 816.

[44] *Id.* (emphasis in original).

[45] *Id.* (emphasis added).

A:     No.[46]

Plaintiff's husband, William Earl Lowery, testified similarly. During his deposition, defense counsel showed Mr. Lowery a photograph, which was marked as Exhibit 2 to his deposition.[47] Mr. Lowery testified that he believed his stepson (Plaintiff's son) took the picture.[48] He further testified that the vehicle depicted in the photograph looked like his wife's Ford and that the items in the trunk looked like the items they had in their trunk.[49] Finally, Mr. Lowery testified that the photograph fairly and accurately depicted the hole that he believes his wife stepped into on the day of the incident.[50] Specifically, Mr. Lowery testified as follows:

> Q:     … And Exhibit 2, does the vehicle in Exhibit 2 look like you wife's Ford?
> A:     Yeah, it looks like it.
> Q:     It looks like you get a little peek inside her trunk; do you see that?
> A:     Yeah.
> Q:     Does that look like stuff that you guys at one point, had in your trunk?
> A:     This does, I think.
> Q:     All right. And does Exhibit 2 fairly and accurately depict the hole that you believe that your wife stepped into?
> A:     I believe so.[51]

When questioned about the condition at issue, Mr. Lowery had no evidence with which to satisfy the time-notice rule. Specifically, he testified as follows:

---

[46] Exhibit B at Page 65, Lines 20-25 and Page 66, Line 1.
[47] Exhibit C at Page 39, Lines 8-22.
[48] *Id.*
[49] *Id.* at Page 41 at Lines 12-20.
[50] *Id.* at Page 41, Lines 21-24.
[51] *Id.* at Page 41, Lines 12-24.

15

Q:     The condition shown in Exhibit 2, do you have—without guessing, do you have any idea how long that condition existed prior to your wife's accident?

A:     No.[52]

The above testimony makes it clear that Plaintiff has no evidence with which to satisfy her time-notice burden. Neither Plaintiff nor her husband have any evidence concerning when the condition at issue was created.

Since Plaintiff has no evidence about when the pothole was created, Defendant has established that Plaintiff cannot satisfy the "time-notice rule." To establish that Defendant failed to remedy or warn about the condition within a reasonable time, Plaintiff must be able to: (1) identify when the condition was created; or (2) establish a time period in which the condition was present on the floor and thus able to be discovered by Defendant. Plaintiff has admitted that she cannot make this showing. Without temporal evidence sufficient to satisfy the "time-notice rule," which Plaintiff does not have, *Reece* mandates that Plaintiff's constructive notice claim must fail. Consequently, Defendant has established that there is no genuine issue of material fact about the constructive knowledge element of Plaintiff's premises liability cause of action.

Plaintiff has failed to introduce any evidence to satisfy the "time-notice rule." Consequently, Defendant has established that there is no genuine issue of material fact about the constructive knowledge element of Plaintiff's premises

---

[52] *Id.* at Page 63, Lines 7-10.

16

liability cause of action. As such, Plaintiff's premises liability cause of action should be dismissed for lack of actual or constructive notice.

**D.    THE POTHOLE DID NOT POSE AN UNREASONABLE RISK OF HARM AS A MATTER OF LAW.**

Even if Defendant had actual or constructive knowledge of the pothole in its parking lot—which Defendant denies—in order for Plaintiff to prevail in her cause of action against Defendant, she must also prove that the condition on the premises posed an unreasonable risk of harm. Defendant should be granted final summary judgment because the alleged condition did not pose an unreasonable risk of harm, as a matter of law.

The pothole at issue is visible in Exhibit D. It depicts a pothole several inches in length and several inches wide.[53] Nothing blocks the pothole from view.[54]

"[A] condition is not unreasonably dangerous simply because it is not foolproof; instead, a condition is unreasonably dangerous if it presents an unreasonable risk of harm."[55] A condition presenting an unreasonable risk of harm is defined as one in which "there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as

---

[53] *See* Exhibit D.

[54] *Id.*

[55] *Dietz v. Hill Country Restaurants, Inc.*, 398 S.W.3d 761, 763 (Tex. App—San Antonio 2011, no pet.) (citing *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007)).

likely to happen."[56] Courts have routinely held that, although a customer tripped and fell on the premises of a retail store, the object upon which the customer tripped did not constitute an unreasonable risk of harm as a matter of law.

For example, in <u>Seideneck</u>, the plaintiff alleged she tripped on a hole or loop in the defendant's rug while she was an invitee in the defendant's showroom.[57] The court held that plaintiff's testimony that her heel got caught in the rug and that her body went backwards was some evidence that she tripped on the rug, and that a jury could have reasonably inferred that the rug was the cause of the fall.[58] The court noted, however, that there was no evidence that the rug posed an unreasonable risk of harm.[59] One of the factors the court relied on in reaching its decision was that there was no evidence in the record that during the time the rug had been on the floor, anyone had previously tripped on it.[60] Courts also consider whether other people had complained about the condition prior to the incident and whether the condition "is unusual as compared to other objects in the same class."[61]

---

[56]*Garcia v. Wal-Mart Stores Texas, L.L.C.*, No. CIV. A. M–12–110, 2012 WL 6691131, at *4 (S.D. Tex. Dec. 21, 2012), *reconsideration denied*, No. CIV. A. M–12–110, 2013 WL 1093102 (S.D. Tex. Mar. 15, 2013) (citing *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)).

[57] *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex. 1970).

[58] *Id*. at 754.

[59] *Id*. at 755.

[60] *Id*. at 754.

[61] *Martin v. Chick-Fil-A*, No. 14–13–00025–CV, 2014 WL 46581, at *3–4 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, no pet. h.).

Potholes are not unusual in large parking lots. Plaintiff admitted to this common everyday knowledge during her deposition. She testified that she agreed that potholes are common in parking lots.[62] She further testified that she had encountered potholes in parking lots before the Wal-Mart incident:

Q:    Have you ever—prior to this Wal-Mart incident, have you ever seen a depression or a hole in a parking lot at a retail store?
A:    In somebody else's?
Q:    Yes.
A:    Yes.
Q:    Before this incident, you'd encountered potholes before?
A:    Yes.[63]

More importantly, Plaintiff and her husband both conceded that they have no evidence that anyone else had suffered injury from the pothole in question prior to Plaintiff's incident. Plaintiff testified as follows:

Q:    Are you aware of any other accidents that occurred on the Wal-Mart property prior to this accident concerning that pothole that you—
A:    No.
Q:    --tripped on?[64]
…
Q:    You're not aware of any other accidents happening as a result of that parking lot depression?
A:    No.[65]

Her husband, Earl Lowery, testified as follows:

Q:    Had your wife, prior to this incident, ever told you of any sort of problems that she saw with this particular Wal-Mart's parking lot?

---

[62] *See* Exhibit B at Page 76, Lines 1-8.
[63] Exhibit B at Page 65, Lines 13-21.
[64] Exhibit B at Page 65, Lines 15-19.
[65] *Id.* at Page 75, Lines 8-11.

A:     No.

Q:     Before this accident, did anyone, whether it be your family members, your friends, or anyone at Wal-Mart, or anybody, did anyone ever tell you anything addressing any issues with that particular store's parking lot?

A:     No.[66]

…

Q:     All right. Are you aware of anybody else stepping in that defect?

A:     No.

Q:     Are you aware of anybody else ever being injured in that defect?

A:     No.[67]

When an unreasonable risk cannot be anticipated from a condition, or from a condition about which the owner/occupier did not know and could not have discovered with reasonable care, there is no liability for harm.[68] Not every condition encountered on a premises that causes injury poses an unreasonable risk of harm. In multiple cases, courts have held that particular conditions do <u>not</u> pose unreasonable risks of harm as a matter of law. For example:

•   Summary judgment affirmed for defendant premises owner/operator when plaintiff slipped and fell on sand gravel in a parking lot.[69]

•   Summary judgment affirmed for defendant premises owner/operator when plaintiff slipped and fell on slime and mud in a parking lot.[70]

---

[66] Exhibit C at Page 32, Lines 16-24.

[67] *Id.*at Page 57, Lines 19-24.

[68] *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 61, at 426 (5th ed.1984).

[69] *Porras v. Toy*, 1999 WL 460196 (Tex. App.—Houston [1st Dist.] 1999, no pet.)(not designated for publication).

[70] *Eubanks v. Pappas Restaurants, Inc.*, 212 S.W.3d 838 (Tex.App.—[Houston [1st Dist.] 2007, reh'g overruled).

- Naturally occurring mud on sidewalk near a business entrance does not pose an unreasonable risk of harm.[71]

- Any icy bridge during cold, wet weather.[72]

Similarly, in the present case, the alleged existence of a common, everyday pothole in Defendant's parking lot does not constitute an unreasonable risk of harm as a matter of law. Like *Seideneck*, Plaintiff's testimony is some evidence that she tripped in a pothole, however, there is no evidence in the record that anyone had ever had an accident in the parking lot in the same area where Plaintiff's incident occurred and there is no evidence that anyone ever complained about the pothole. Potholes are typical and extraordinarily common in parking lots. There is nothing to indicate that the pothole at issue presented an unreasonable risk of harm.

The case of *Gaines v EG & G Technical Services, Inc*., summarizes this position well. In *Gaines*, the plaintiff—an invitee—tripped and fell while on the defendant's warehouse property.[73] She claimed that she fell because there was a one-inch deep "depression" in the pavement, and brought suit against the defendant for its alleged negligence.[74] The defendant filed a motion for summary

---

[71] *M.O. Dental Lab. V. Rape*, 139 S.W.3d 671, 675 (Tex. 2004).
[72] *State Dept. of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex. 1993).
[73] *Gaines v. EG & G Technical Services, Inc.*, EP-04-CA-0341-FM, 2005 WL 3132478, at *2 (W.D. Tex. Nov. 18, 2005).
[74] *Id.*

judgment on the issue of whether this "condition" posed an unreasonable risk of harm.[75] The court found that it did not, as a matter of law.[76]

The court stated that whether a condition carries an unreasonable risk of harm is a "matter of reasonableness" and the determination is made by considering whether a reasonably prudent person would foresee that injury would likely result from the condition.[77] The court then explained that parking lot surfaces are commonly irregular and the law does not require that they be smooth and free from deviations.[78] The court cited an opinion of the Supreme Court of Texas for this assertion: "[A] premises owner or occupier is not strictly liable for defects on its premises . . . . [N]o court has ever suggested that if it is possible to construct buildings or fixtures with materials that are impervious to wear and tear, an owner or occupier has a legal duty to do so and is charged with knowledge of an unreasonably dangerous condition if it does not."[79] The court found that a reasonably prudent person "would not foresee the harm resulting from a depression common to asphalt/gravel parking lots, was in plain view and which no one had ever fallen over before."[80] Therefore, the court granted defendant's motion for

---

[75] *Id.* at *2.

[76] *Id.* at *3.

[77] *Id.* (citing *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975)).

[78] *Id.*

[79] *Id.* (quoting *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101–02 (Tex. 2000) (internal quotations omitted).

[80] *Id.*

summary judgment, finding that the uneven parking lot surface was not an unreasonably dangerous condition.[81]

Here, the facts and circumstances are nearly identical to that in *Gaines*. Plaintiff is suing Defendant under a premises liability theory because she alleges she tripped on uneven pavement, just as the plaintiff in *Gaines* claimed. In both cases, the harm allegedly resulted from common irregularities in the pavement which were in plain view. In addition, Defendant has already demonstrated that Plaintiff has no evidence that anyone has ever fallen in Defendant's parking lot in the area of her incident; the plaintiff in *Gaines* also had no evidence of this kind. The *Gaines* court found that a reasonably prudent person would not foresee harm resulting from a common irregularity in parking lots where the irregularity is in plain view and there are no reports of prior injuries. In the case at bar, Defendant's summary judgment motion should be granted for the exact same reasons.

## E. THE POTHOLE AT ISSUE WAS AN OPEN AND OBVIOUS CONDITION FOR WHICH DEFENDANT OWED PLAINTIFF NO LEGAL DUTY.

A landowner's premises liability duty is to make the premises safe or warn against any **concealed**, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware, but the invitee is not.[82] The law imposes this

---

[81] *Id.*
[82] *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) (emphasis added).

duty on landowners because they are in a "superior position to know of or discover **hidden** dangerous conditions on [the] premises."[83]

"[W]hether a danger is open and obvious as a matter of law is an objective question for the court to determine."[84] A condition that is open and obvious is proof of knowledge and appreciation as a matter of law.[85]

When a condition is deemed "open and obvious," it means that there is no dispute in the evidence concerning the facts which charge a plaintiff with knowledge and full appreciation of the nature and extent of the danger, and those two facts are established as a matter of law.[86] If the condition is so patently open and obvious that the plaintiff must have seen it, a court will charge her with knowledge of the condition. "It is sometimes stated that the plaintiff may not close his eyes to obvious conditions."[87]

In addition, several jurisdictions are instructive, having held that sidewalks, curbs, and parking lots with cracks or defects are not hazardous conditions as a matter of law, regardless of complaints, because they are open and obvious

---

[83] *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex. 1973) (emphasis added); *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR PHYSICAL & EMOTIONAL HARM § 51 cmt. t (2012) (addressing landowner's "superior knowledge of the dangerous condition").
[84] *Lozano v. H.D. Indus., Inc.*, 953 S.W.2d 304, 314 (Tex. App.—El Paso 1997, no writ).
[85] *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 521 (Tex. 1978).

[86] *Massman-Johnson v. Gundolf*, 484 S.W.2d 555, 556–57 (Tex. 1972).
[87] *Goodson v. Southland Corp.*, 454 S.W.2d 823, 827 (Tex. Civ. App.—El Paso 1970), *writ ref'd n.r.e.* (Oct. 7, 1970).

conditions.[88] These courts reason—like the Supreme Court of Texas—that a premises owner is not an insurer of its customers' safety.[89]

As an example, in *Morehead v. H.E. Butt Grocery Co.*, the plaintiff sued HEB after he tripped and fell in its parking lot due to the presence of loose rocks, debris, and gravel.[90] The trial court granted summary judgment in favor of HEB, and the plaintiff appealed. The Court of Appeals affirmed the judgment. According to the appeals court, the condition at issue was "open and obvious to an adult person exercising ordinary care." The Court, as a matter of law, held that the plaintiff should have known and appreciated the danger of the driveway with rocks and debris on them, which were in plain view.

The pothole at issue, shown in Exhibit 2—is open and obvious to any person exercising ordinary prudence. Plaintiff cannot turn a blind eye to an open and obvious condition and expect to recover against Defendant, who is not an insurer of her safety. Accordingly, Defendant should be granted final summary judgment as a matter of law with respect to Plaintiff's premises liability claim.

---

[88] *See, e.g., Parker v. Wal-Mart Stores, Inc.*, No. CIVA 305CV768–HTWJCS, 2007 WL 672263 (S.D. Miss. Feb. 28, 2007), *aff'd*, 261 Fed. App'x 724 (5th Cir. 2008) (two inch deep crack obscured by red paint not unreasonably dangerous as a matter of law); *see also Jennings v. Ryan's Family Steak Houses, E., Inc.*, No. CIV.A. 03–1598, 2005 WL 2180487 (W.D. La. Sept. 9, 2005).
[89] *See id.*
[90] *Morehead v. H.E. Butt Grocer Co.*, 333 S.W.2d 428 (Tex. App.—Austin) 1960.

**E.    GROSS NEGLIGENCE IS IMPROPER BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE EXISTENCE OF AN EXTREME DEGREE OF RISK, OR THAT DEFENDANT HAD ACTUAL, SUBJECTIVE AWARENESS OF ANY RISK.**

Plaintiff alleges that Defendant was grossly negligent in causing Plaintiff's injuries. Damages for gross negligence are only proper in instances above and beyond ordinary negligence. To recover gross negligence damages, a plaintiff must make a two-part showing. First, the act or omission at issue, when viewed objectively from the defendant's standpoint at the time it occurred, must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others.[91] Additionally, the plaintiff must also show that the defendant had actual, subjective awareness of the risk, but still proceeded with a conscious indifference to the rights, safety, or welfare of others.[92]

Here, Plaintiff cannot establish that Defendant had actual, subjective awareness of any risk associated with the pothole. To the contrary, the evidence establishes the opposite: that Defendant had no actual, subjective awareness of the risk at issue. To borrow from the sound reasoning of the Western District of Texas, a reasonably prudent person would not foresee harm resulting from a change in

---

[91] TEX. CIV. PRAC. & REM. C. § 41.001(11)(A).
[92] TEX. CIV. PRAC. & REM. C. § 41.001(11)(B).

elevation common in parking lots everywhere, which was in plain view, and upon which no one had ever fallen before.[93]

Further, Plaintiff cannot establish that any alleged omission by Defendant involved an extreme degree of risk. To qualify as an "extreme degree of risk," a plaintiff must show that, from the defendant's point of view, there was a likelihood of serious injury to the plaintiff.[94] Such risk must amount to more than a remote possibility of injury or even a high probability of minor harm.[95] Hindsight is not permitted in evaluating the extreme degree of risk; rather, such determination must be made at the time the act or omission occurred.[96]

Here, Plaintiff cannot show, that from Wal-Mart's point of view, there was a likelihood of <u>serious injury</u> to her by Wal-Mart's alleged failure to inspect the premises. As noted above, there is no evidence of any complaints involving a trip and fall in this part of the Store's parking lot. Slight, unmarked changes in elevation which are in plain view are extraordinarily common and encountered every day in parking lots, sidewalks, driveways, and walkways across America.

For gross negligence to survive summary judgment, a genuine issue of material fact must exist regarding an extreme degree of risk to Plaintiff, and Defendant must have actual, subjective awareness of that risk. There must be more

---

[93] *Gaines v. EG & G Technical Servs., Inc.,* No. EP-04-CA-0341-FM, 2005 WL 3132478, at *3 (W.D. Tex. Nov. 18, 2005)
[94] *Transportation Ins. v. Moriel*, 879 S.W.2d 10 (Tex.1994).
[95] *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 971, 921 n.2 (Tex.1998).
[96] *Moriel,* 879 S.W.2d at 23.

than a remote possibility of injury, and there must be more than mere hindsight to support a gross negligence claim. Here, there is absolutely no evidence that Defendant's employees knew of any risk to Plaintiff. Indeed, the evidence shows precisely the opposite. As such, no genuine issue of material fact exists regarding Plaintiff's gross negligence claim, and summary judgment should be granted on that claim in Defendant's favor.

## V. CONCLUSION

Defendant has established that Plaintiff cannot create a genuine issue of material fact regarding Defendant's actual or constructive knowledge of the alleged condition in this case. In addition, Defendant has established that the alleged condition is not unreasonably dangerous as a matter of law. Further, Defendant has established that the condition is open and obvious as a matter of law.

Further, no genuine issue of material fact exists regarding Plaintiff's claim for gross negligence damages. There is no evidence that any act or omission by Defendant posed an extreme risk of harm to Plaintiff, nor is there evidence that Defendant had actual, subjective awareness of the risk to Plaintiff. Gross negligence damages are meant to punish conduct that exceeds the scope of

ordinary negligence, and that standard is not met here. As such, summary judgment is proper on Plaintiff's gross negligence claim.

Accordingly, Defendant's Motion for Summary Judgment should be granted, and Plaintiff's claims should be dismissed, with prejudice.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiff, Lynn Lowery, take nothing by way of this suit; that Judgment be entered for Defendant; and that Defendant have any other and further relief, in law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

BUSH & RAMIREZ, PLLC

*/s/ Julie C. Warnock*
John A. Ramirez
SBN: 00798450
FBN: 21280
Julie C. Warnock
SBN: 24063574
FBN: 1107157
5615 Kirby, Suite 900
Houston, Texas 77005
T: (713) 626-1555
F: (713) 622-8077
jramirez.atty@bushramirez.com
jwarnock.atty@bushramirez.com

ATTORNEYS FOR DEFENDANT,
WAL-MART STORES TEXAS, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing instrument has been sent to Plaintiff by facsimile, certified mail, return receipt requested and/or delivery service this 18th day of January 2018.

Roy D. Brantley
West, Webb, Allbritton & Gentry, PC
1515 Emerald Plaza
College Station, Texas 77845

*/s/ Julie C. Warnock*
John A. Ramirez/Julie C. Warnock